DONALD W. DAVIS *vs.* BOARD OF REGISTRARS OF VOTERS OF BILLERICA & another.[1]

Middlesex. April 9, 1970. — June 10, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Elections.*

Failure of registrars of voters to comply with the requirement of G. L. c. 54, § 135, that upon a recount after an election a "member of the board of registrars shall endorse over his signature on the back of each protested ballot . . . the name of the candidate for whom the vote is counted," with respect to three protested ballots on which the result of the recount turned, rendered the recount invalid, and the original count must stand.

---

[1] The town clerk, a member ex officio of the board of registrars of voters, is a respondent. Stuart L. Potter, one of the candidates for election, was permitted to intervene.

PETITION for a writ of mandamus filed in the Superior Court on March 19, 1969.

The case was heard by *Taveira, J.*

The case was submitted on briefs.

*Cornelius T. Finnegan, Jr.,* for the petitioner.

*Edward J. Owens,* Town Counsel, for the respondents.

SPALDING, J. This is a petition for a writ of mandamus alleging certain irregularities in the conduct of an election recount. The relief sought is to require the respondents to make return of votes in such manner as to include certain votes which were not counted, but which should lawfully have been counted for the petitioner. The petitioner also seeks to enjoin the respondents from issuing a certificate of election to Stuart L. Potter, the intervener. The judge made "Findings and Order for Judgment" on the basis of which the facts are stated. The evidence is reported.

On March 1, 1969, an election was held in the town of Billerica for various offices in the town government. The voters were to choose two persons for the office of selectman for a term of three years beginning March 3, 1969. Two of the candidates on the official ballots for this office were the petitioner, Donald W. Davis, and the intervener, Stuart L. Potter. The return of the votes was 1,749 for Davis; 1,742 for Potter. Davis (and apparently a second candidate whose election is not challenged) were declared elected and sworn into office.

Both Davis and Potter petitioned for a recount of the ballots cast at the election in all six precincts of the town. The recount was duly held, with both Davis and Potter or their representatives present. Certain ballots in various precincts were challenged.

At the trial seven ballots were introduced in evidence. The judge found that the respondents had failed to indorse on the back of three of the protested ballots the names of the candidates which the respondents credited with a vote. The result of the recount turned on these three ballots, for without them there would have been a tie. On the face of the three ballots, the judge concluded that two of the

voters intended to vote for Potter, and one intended to vote for Davis. If the votes had been in fact so recorded, Potter would have won. However, the judge was of opinion that "the failure to endorse the names of the person voted for leaves a question in the mind of the Court as to how these ballots were counted and for whom the votes were counted. There is no way of knowing definitely who protested these ballots."

The judge ruled that although G. L. c. 54, § 135, was not expressly referred to in the petition, the petition was "broad enough . . . to include the application of this section of the statute." [2] He determined that the respondents' failure to indorse the names of the candidates who were credited with a vote constituted a violation of the statute and that the case was governed by the principle established in *Felch* v. *Registrars of Voters of Salisbury*, 336 Mass. 7, 10–11. The judge observed that "because of the closeness of the results of the recount where there was only a one vote difference and where the election could turn on one vote, the failure to comply with the requirements of the statute cannot be said to be harmless to the rights of the parties interested and particularly to the petitioner. The failure to comply with the requirements of the statute make[s] it impossible to determine from the three ballots . . . how these ballots were counted without basing a conclusion upon a rebuttable or arguable assumption." The judge declared the recount invalid, and ordered that "a peremptory writ is to be issued commanding the respondents to record the results of the election as recorded in the original returns, that is, 1,749 votes for Donald W. Davis and 1,742 votes for . . . [Stuart] L. Potter, and that a certificate of election be issued to said Donald W. Davis." The respondents and the intervener Potter appealed.

The respondents concede that they "did not have endorsed on the back of . . . [three protested ballots] the names of the candidates which the respondents credited

---

[2] This ruling, with which we agree, is not challenged on appeal.

with a vote . . . nor were they signed by the respondents."
They also concede that this constitutes a failure to comply
with G. L. c. 54, § 135, the relevant portion of which pro-
vides that "A member of the board of registrars shall
endorse over his signature on the back of each protested
ballot the block number of which it is a part and the office
for which the vote is protested, together with the name of
the candidate for whom the vote is counted" (indorsement
provision). The respondents contend, however, that strict
compliance with the statute is not absolutely essential to
the validity of the recount.

This portion of G. L. c. 54, § 135, was considered in
*Felch* v. *Registrars of Voters of Salisbury*, 336 Mass. 7, 11–12,
where we held that it "cannot be said to be a mere formal
requirement. Rather, it is a requirement of substance, and
is mandatory. It was obviously designed to lay the founda-
tion for an efficacious review of the action of the registrars by
the courts . . . ." In the *Felch* case the failure of the board
of registrars to comply with the indorsement provision of
G. L. c. 54, § 135, made it impossible for the judge to deter-
mine how twenty-nine of forty-six protested ballots were
counted on the recount. In the case at bar the admitted
failure of the board of registrars to comply with the same
indorsement provision made it impossible for the judge to
ascertain how three outcome determinative votes were
counted. The indorsement provision is still a requirement
of substance, and is still mandatory, as we held in the *Felch*
case. The fact that the outcome here turns on an accurate
determination of how a mere three votes were counted
simply underlines the importance of strict compliance with
this provision.

In the *Felch* case we recognized that not every failure
to observe the requirements of the recount statutes would
vitiate the recount. "Doubtless there are provisions which
may be considered as directory, and failure to comply
with them is not a condition precedent to the validity of
the recount." 336 Mass. at 10. Several deviations from
G. L. c. 54, § 135, which may have fallen into that class

were presented in *Early* v. *Registrars of Voters of Worcester*, 345 Mass. 47, but were not discussed. This was because, as in the *Felch* case, there had also been a failure to comply with the indorsement provision, and this proved fatal to the recount. In *Abbene* v. *Election Commrs. of Revere*, 348 Mass. 247, the deviation was from that part of G. L. c. 54, § 135, which provides that election officials "shall . . . enclose all protested ballots in a separate envelope, seal the envelope with a seal provided therefor and certify upon the envelope that it contains all ballots that have been protested" (certification provision). The judge found fraud in the marking of ballots sufficient to change the result. No question of any failure to comply with the indorsement provision was raised, and the judge was able to determine how the tally should be adjusted. We held that although there was "a failure to comply strictly with the certification provision of the statute, there was nonetheless such a substantial compliance as to place before the court in two sealed envelopes all protested ballots, thus satisfying the objective of the statute." 348 Mass. at 250. Thus the *Abbene* decision established that the certification provision, at least where there had been substantial compliance with it, was one of those provisions which in the language of the *Felch* case "may be considered as directory." 336 Mass. at 10. *Crosby* v. *Election Commrs. of Newton*, 350 Mass. 544, confirmed this result, where despite technical deviations from the requirements of the certification provision of G. L. c. 54, § 135, the results of the recount were allowed to stand. We observed that there was no allegation or indication "that such deviations . . . as did occur may have upset the accuracy of the recount" and held that "the deviations from the statute were nonharmful" and that there had been "substantial compliance." 350 Mass. at 547–548.

In the case at bar the failure of the board of registrars to comply with the indorsement provision made it impossible for the court to ascertain how three votes, on which the results of the recount turned, were counted. This deficiency is not a mere technical variance from statutory requirements

which might be deemed inconsequential or harmless. It does not involve the certification provision, which the *Abbene* and *Crosby* cases held was satisfied by substantial compliance, but rather the indorsement provision, which the *Felch* and *Early* cases held was mandatory and required strict compliance. The judge rightly ruled that the failure to comply with the indorsement provision rendered the recount invalid.

*Order for judgment affirmed.*